IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RAQUEL HOLLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:18-CV-360-SMD |
| | ) |
| ANDREW SAUL,[1] | ) |
| *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

### I. INTRODUCTION

Raquel Hollis ("Hollis") applied for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act ("the Act") alleging a disability date of May 16, 2015. (R. 206, 208). The application was initially denied. (R. 18). A hearing was held before the Administrative Law Judge ("ALJ"). (R. 34-67). The ALJ rendered an unfavorable decision on April 27, 2017. (R. 15-33). The Appeals Council denied Plaintiff's request for review. (R. 1-6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct

---

[1] The Court takes notice that Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of the Court is directed to substitute Saul as Defendant in this case for Nancy Berryhill.

of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 11); Def.'s Consent to Jurisdiction (Doc. 10). After careful scrutiny of the record and briefs, for reasons herein explained, the undersigned concludes that the Commissioner's decision is due to be AFFIRMED.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v.*

*Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*.*" *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based

upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical. *See Strickland v. Harris*, 615 F.2d 1103, 1105-06 (5th Cir. 1980). Therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform her or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step four. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step one through Step four. At Step five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. RFC is what the claimant is still able to do despite her impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

5

to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was thirty-eight years old at the time of her alleged onset date. (R. 27, 206, 208). Plaintiff has a limited education and has past relevant work as a certified nursing assistant, cook helper, janitor, child care attendant, hotel desk clerk, sales clerk, fast food worker, and automobile parts assembler. (R. 27, 228, 230-31, 259). In evaluating Plaintiff's application, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. (R. 19-20). The ALJ found that Plaintiff met the insured status requirements of the Act, had not engaged in substantial gainful activity since the alleged onset date, and had the severe impairments: "spine disorders with associated back and pelvic pain; depression; radiculopathy/nerve pain; and arthritis." (R. 20-21). The ALJ found that Plaintiff's severe impairments cause significant limitation on Plaintiff's ability to perform basic work activities. (R. 21). The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 21).

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 414.967(b) except that

> the claimant can lift up to 20 pounds occasionally and 10 pounds frequently. Further the claimant can stand for 15 minutes, and would need to sit for 5 minutes; and the claimant can walk for 10 minutes, and would need to sit for 5 minutes. In addition, the claimant can walk up to 15 feet. The claimant can occasionally operate foot controls bilaterally; she can occasional climb

6

ramps and stairs; and she can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. Further, the claimant should avoid all exposure to moving mechanical parts and unprotected heights. The claimant can tolerate occasional exposure to dust, odors, fumes, pulmonary irritants, extreme heat and cold. Further, the claimant's time off task can be accommodated by normal breaks.

(R. 22-23). The ALJ next compared Plaintiff's RFC to the physical demands of her past relevant work and found that she was unable to perform such work. (R. 27). At the final step of the sequential evaluation, the ALJ found, with the benefit of testimony from a vocational expert, that there were jobs existing in significant numbers in the national economy that Plaintiff can perform, such as garment sorter, inspector, and tagger. (R. 28). The ALJ therefore found that Plaintiff had not been disabled at any time from May 26, 2015, the alleged onset date, through April 27, 2017, the date of the decision. (R. 28).

## V. MEDICAL HISTORY

Plaintiff's medical records begin with a surgery report from January 12, 1994. (R. 303). Plaintiff was diagnosed with aggressive fibromatosis and had a mass removed from her gluteus minimus and medius near the left iliac wing. (R. 303-05). Plaintiff was discharged a week later in stable condition. *Id.* The next entry in the record is an initial consultation with Dr. Hal Tobias at Neurology Associates of the Treasure Coast ("NATC") in Palm City, Fla. dated November 11, 2010. (R. 337-42). At the consultation, Plaintiff complained of low and mid back pain as well as neck pain. (R. 337). Plaintiff denied any muscle or joint stiffness, muscle soreness, or limb pain. *Id.* Dr. Tobias' examination showed normal motor movement, normal gait, and normal muscle tone and function. (R. 339-40). However, he noted "bilateral rhomboid, lumbar paraspinal, left piriformis, left SI

7

joint, and thoracic midline spinal pain to pressure." (R. 339). Plaintiff was scheduled for physical therapy, was given forms to complete regarding chronic opioid therapy, and told to return for a follow up in two weeks. (R. 341).

On November 17, 2010, Plaintiff had an MRI performed on her cervical, lumbar, and thoracic spine. (R. 344-46). The MRI of the lumbar and thoracic spine showed no disc bulges or herniation, no central canal or neural foraminal stenosis, no osseous abnormalities, or pathologic gadolinium enhancement. *Id.* The MRI of the cervical spine showed a mild disc bulge at the C4-5 vertebrae, mild right neural foraminal stenosis, and a small central disc protrusion at the C5-6 vertebrae. (R. 331). Plaintiff had a follow-up appointment with Dr. Tobias on November 30, 2010, but she had not completed the pain forms, so he performed a drug toxicology screen and rescheduled Plaintiff for a later appointment. (R. 335). Plaintiff next saw Dr. Tobias on December 8, 2010. (R. 331-33). Dr. Tobias reviewed Plaintiff's MRI results as well as her toxicology screen which was positive for marijuana. (R. 331-32). Dr. Tobias prescribed Robaxin for pain, counseled Plaintiff to cease marijuana use, and reminded Plaintiff to complete the paperwork previously given to her. (R. 333).

Plaintiff saw Dr. Tobias again on January 6, 2011. (R. 328-30). Plaintiff complained of severe low and mid back pain and neck pain. (R. 328). Dr. Tobias' physical examination noted normal gait, normal motor movement and function, and no atrophy or pain to pressure noted. (R. 329). Dr. Tobias directed continued use of Robaxin for pain. *Id.* The record shows no further treatment from NATC and shows no indication that Plaintiff started physical therapy as recommended by Dr. Tobias.

Plaintiff's medical record resumes with a visit to the emergency room at the Martin Memorial Medical Center ("MMMC") in Stuart, Fla. on January 15, 2012. (R. 351-55). At the visit, Plaintiff complained of severe pain in the lumbar spine. (R. 351). Plaintiff indicated she had no pelvic pain, no leg pain, and no paresis, tingling, or weakness. The physician's physical examination reported no spinous process tenderness of the lumbar spine. (R. 352). The physician noted appreciable pain upon deep palpation near the L4-L5 region, but noted that examination of the lower extremity revealed no deficit with full range of motion and muscle strength. *Id.* The physician scheduled a CT of the abdomen and pelvis. (R. 363-64). The CT noted "probable remote trauma to the pelvis with severe osteoarthritis of the sacroiliac joints." (R. 364).

Plaintiff was seen again at the MMMC emergency room on October 19, 2012. (R. 356-59). Plaintiff complained of severe pain in the lumbar thoracic region. (R. 356). The physician's examination showed back pain but no deformity, numbness, or weakness. (R. 357). The physician diagnosed "back pain" and prescribed pain medication. (R. 358). Plaintiff went to the MMMC emergency room a third time on March 1, 2015 complaining of left leg pain. (R. 359-60). The physician noted pain to the sciatic area on palpation but observed no point tenderness on the lumbar spine, normal motor strength and function, and intact gait. (R. 361-62). A CT of the lumbar spine conducted that same day noted no lumbar spine fracture or significant spinal stenosis but did note "postoperative and chronic changes involving the pubic symphysis and left pelvis as well as prominent SI joint arthritis similar to the prior study." (R. 365-66).

Plaintiff visited the emergency room at the East Alabama Medical Center in Opelika, Ala. on November 11, 2015 complaining of "side pain" but there is no indication in the record of tests or examinations performed, diagnoses made, or treatments recommended. (R. 368-73).

Plaintiff was seen by Dr. Robert Schuster at Lake Martin Family Medicine ("LMFM") on January 4, 2016. (R. 375-77). Plaintiff complained of "shoulder/low back pain." (R. 375). Dr. Schuster observed in his examination decreased range of motion in the cervical and lumbar spine, multiple tender points, and left shoulder weakness. (R. 376). Dr. Schuster assessed fibromyalgia and prescribed Cymbalta. *Id.* Dr. Schuster ordered an x-ray of the lumbar spine and scheduled a follow-up in two weeks. *Id.* The x-ray, performed on January 27, 2016 showed normal alignment and spacing of the vertebrae with no fractures or subluxation. (R. 387). Plaintiff was seen again by Dr. Schuster on February 1, 2016. (R. 378-80). Dr. Schuster observed decreased range of motion in the lumbar spine and "moderate OA left hip." (R. 379). Dr. Schuster assessed lumbar disc degeneration, osteoarthritis, and fibromyalgia and prescribed Cymbalta as well as a heat pad and stretching. (R. 379). Dr. Schuster did not recommend physical therapy or other recurring treatment plan.

Plaintiff was seen again for back pain at LMFM by Nurse Practitioner Laura Daniel ("Daniel") on April 21, 2016. (R. 381-82). Daniel examined Plaintiff and observed slight tenderness in the right hip area, slight decrease in range of motion of diffuse joints due to muscle stiffness, and ambulation within normal limits. (R. 381). Daniel assessed myalgia and prescribed rest, increased fluid intake, and Lyrica. (R. 382).

## VI. PLAINTIFF'S ARGUMENT

Plaintiff argues that the ALJ erred by failing to meaningfully discuss how her "probable remote trauma to the pelvis with severe osteoarthritis of the sacroiliac joints and the pubic symphysis might affect her ability to work." (Doc. 12) at 3. Plaintiff further argues that the ALJ erred by failing to "provide adequate rationale addressing the medical opinions of record expressed by Dr. Durant which support a disability finding. *Id.* The undersigned addresses each of these issues in turn.

## VII. ANALYSIS

### A. The ALJ Properly Considered Plaintiff's Pelvic Impairment.

Plaintiff argues that the ALJ did not properly consider her subjective complaints of pelvic pain and the results of an abdominal and pelvic CT scan. (Doc. 12) at 4-7. Plaintiff avers that the ALJ failed to acknowledge objective medical evidence—primarily the pelvic CT scan—that evidenced a medically determinable impairment. *Id.* at 5. Plaintiff asserts that, by failing to meaningfully discuss how this impairment affected her ability to work, the ALJ committed reversable error. *Id.* at 7.

"In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If the ALJ discredits subjective

testimony, he must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1226 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote v Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

Plaintiff testified that she has been unable to work because of constant pain which prevented her from standing, walking, and bending. (R. 42-43). Plaintiff testified that she can only stand for ten to fifteen minutes at a time before needing to sit down and she can only walk for about ten minutes. (R. 46). Plaintiff further testified she could not lift more than ten pounds at a time and cannot squat or stoop without assistance. (R. 47). Plaintiff testified that her pain is on the left side and it shoots from her back, down her leg, and to her feet. (R. 47, 51-52). Plaintiff attributes the pain to her 1994 surgery to remove a mass from her gluteus minimus and medius near the left iliac wing of her pelvis. (R. 51-52, 303-05).

Here, contrary to Plaintiff's assertion that the ALJ failed discuss her pelvic pain, the ALJ specifically found that Plaintiff had a severe impairment of "spine disorders with associated back and pelvic pain" and that the impairment caused "significant limitation in [her] ability to perform basic work activities." (R. 21). However, the ALJ concluded that, although Plaintiff's pelvic pain could reasonably be expected to cause the alleged symptoms, Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the objective medical evidence. (R. 24).

Rather than ignore Plaintiff's testimony, the ALJ expressly acknowledged that Plaintiff's severe impairments included spine disorders with associated pelvic pain and that Plaintiff had alleged pain in the pelvic area, with pain starting at the bottom of her buttocks and radiating to her right leg and pain around her hip. (R. 21, 23, 51-52, 55). The ALJ also noted Plaintiff's testimony regarding her limitations in standing, walking, lifting, stooping, squatting, bending over, kneeling, and climbing stairs due to pelvic pain. (R. 23-24, 46-49, 51, 55).

Despite Plaintiff's testimony regarding the limiting effects of her pain, the ALJ concluded that "the record does not support such significant functional limitations as alleged by the claimant." (R. 24). The ALJ explained that she did not intend to "imply [Plaintiff] was perfectly healthy, but rather, she was not totally debilitated or disabled within the context of the [Act]." (R. 25). Accordingly, the ALJ recognized that Plaintiff would have difficulty in performing many tasks she previously could do, and restricted Plaintiff to an RFC to do light work, with additional standing, walking, foot, postural, environmental, and mental limitations. (R. 22-23, 25).

Substantial evidence supports the ALJ's conclusion that the objective medical evidence did not support Plaintiff's claims of disability due to chronic pain. As the ALJ explained, the record evidence showed only "limited, routine treatment" and "essentially mild to moderate objective findings" which were inconsistent with Plaintiff's allegations of disabling pelvic and other musculoskeletal pain (R. 25). Indeed, the medical record shows no indication of significant, recurring treatment other than medication. Further, as the ALJ explained, "the record does not show serious muscle weakness, muscle spasm,

atrophy, weight loss, or other signs of progressive deterioration that reasonably might be expected when an individual experiences intense and continuous pain or leads an inactive lifestyle as [Plaintiff] alleges." (R. 25).

The ALJ acknowledged that Plaintiff sought hospital treatment in March 2015 for left leg pain starting in her back and numbness in her back on the left side, and that her physical exam showed positive straight leg raising on the left and pain in the sciatic area on the left with palpation. (R. 24, 359-61). The ALJ also noted, however, that Plaintiff had no point tenderness in the lumbar spine and had full 5/5 strength in the L1 to L5 distribution, normal spine palpation and curvature, and intact motor, sensation, and gait. (R. 24, 361-62). As the ALJ also discussed, a lumbar CT scan taken at this time showed no fracture or stenosis, but a CT scan of the abdomen and pelvis showed postoperative chronic changes involving the pubic symphysis and left pelvis and sacroiliac joint arthritis, similar to a prior study taken in January 2012. (R. 24, 362-64, 366). Plaintiff received Solu-Medrol and was discharged the same day with a diagnosis of acute back pain and sciatica, medications for her sciatica, and a recommendation to follow up with her family doctor. (R. 362-63). The only other treatment notes of record for Plaintiff's complaints of pain show similarly limited, conservative treatment and mild to moderate exam findings.

As the ALJ discussed, Plaintiff next sought treatment for shoulder and back pain about ten months later at a January 4, 2016 appointment with Dr. Schuster at LMFM. (R. 24, 375). Plaintiff had decreased cervical and lumbar spine range of motion upon examination and multiple tender points, but also had normal gait and station and intact sensation. (R. 24, 376). Dr. Schuster ordered a cervical spine x-ray, but no other treatment

for Plaintiff's complaints of pain. (R. 376). Although Dr. Schuster had recommended a follow-up visit two weeks later, Plaintiff did not return to LMFM until about one month later in February 2016, with complaints of back pain radiating to her legs. (R. 24, 376, 378). Plaintiff again had decreased lumbar range of motion and multiple tender points upon examination, as well as moderate osteoarthritis of the left hip, but Dr. Schuster prescribed only heat and stretching. (R. 24, 379). Another follow-up at LMFM more than two months later in April 2016 showed only a slight decrease in joint range of motion due to stiffness, with normal ambulation. (R. 24, 381). Plaintiff was diagnosed with myalgia and prescribed Lyrica (Tr. 382). Plaintiff's last visit of record to LMFM, in July 2016, resulted only in a prescription for a muscle relaxant and the application of warm, moist heat. (R. 385-86). As the ALJ noted, the record evidence failed to show any other treatment for her pain or musculoskeletal conditions after this July 2016 visit. (R. 25).

Based on the above facts, substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints regarding her pelvic and other musculoskeletal pain were not fully supported or consistent with the record evidence. *See Foote*, 67 F.3d at 1562 (an ALJ's clearly articulated finding regarding a claimant's symptoms will not be disturbed when supported by substantial evidence). As discussed above and by the ALJ, the medical evidence showing limited, routine treatment and mild to moderate objective findings provide substantial evidence to support the ALJ's determination that Plaintiff's pain was not as severe as she alleged. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). Thus, the ALJ did not err by discounting Plaintiff's subjective statements.

15

**B. The ALJ Properly Considered the Medical Opinion of Dr. Durant.**

Plaintiff argues that the ALJ did not properly consider the medical opinion evidence from Dr. Durant. (Doc. 12) at 7-11. Plaintiff avers that the ALJ erred by affording only "some weight" to Dr. Durant's opinion as an examining source and that, instead, the ALJ should have considered Dr. Durant as a treating physician and afforded his opinion greater weight. *Id.* at 8 n.3. Further, Plaintiff asserts that the ALJ's disregard of Dr. Durant's opinion was "conclusory" and without good cause. *Id.* at 9-11.

In determining the weight to give a medical source's opinion, an ALJ may consider numerous factors, including whether the doctor examined the claimant, whether the doctor treated the claimant, the evidence the doctor presents to support his opinion, whether the doctor's opinion is consistent with the record as a whole, and the doctor's specialty. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating doctor's opinion. *Crawford*, 363 F.3d at 1160; 20 C.F.R. §§ 404.1527(c)(2). However, the opinions of one-time examiners or reviewing physicians, are not entitled to deference or special consideration. *Denomme*, 518 F. App'x at 877 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). "The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician." *Id.* (citing *McSwain*, 814 F.2d at 619). "In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion." *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Here, the ALJ properly considered and weighed the opinion evidence from Dr. Durant. Although the medical record does not reveal any examination of Plaintiff conducted by Dr. Durant, Plaintiff testified that she saw Dr. Durant once sometime in 2016. (R. 43). None of the LMFM treatment notes in the record show that Dr. Durant ever examined or treated Plaintiff. (R. 375-87). Accordingly, the ALJ considered Dr. Durant to be "a non-examining, non-treating source." (R. 26). The ALJ afforded "some weight" to Dr. Durant's opinion, but determined it was not fully supported by the medical record as a whole and was internally inconsistent to the extent that Dr. Durant had indicated Plaintiff could perform a range of light work, but could not work eight hours a day, five days a week. (R. 26).

Substantial evidence supports the ALJ's decision to afford Dr. Durant's opinion only "some weight." The ALJ thoroughly discussed the record evidence and Dr. Durant's opinion in his Medical Source Statement, particularly noting that the medical evidence showed only limited, routine treatment and mild to moderate objective findings, which did not fully support the aspects of Dr. Durant's opinion assessing Plaintiff as wholly disabled (R. 24-26). The ALJ expressly acknowledged that Dr. Durant opined that Plaintiff could sit, stand, and walk up to two hours in an eight-hour workday and that Plaintiff could not work eight hours a day, five days a week. (R. 25-26, 402, 406). Notably, although the form also included a question asking Dr. Durant to identify what activity Plaintiff would be performing if her total time for sitting, standing, and walking did not equal or exceed eight hours, Dr. Durant testified that he was only giving "approximations" with no identification of any other activity that Plaintiff would perform for the remaining two

17

hours. (R. 402). The ALJ determined that this aspect of Dr. Durant's opinion was internally inconsistent with the other limitations with Dr. Durant's opinion indicating Plaintiff was capable of a range of light work. (R. 401-02).

Thus, contrary to Plaintiff's contentions, the ALJ's assessment of the extent to which the record supported Dr. Durant's opinion was not "conclusory" but, instead, was thoroughly explained and based on an extensive discussion of the record evidence. Therefore, the ALJ did not err by discounting the opinion of Dr. Durant.

## VIII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court AFFIRMS the Commissioner's decision. A separate judgment will be entered.

DONE this 12th day of August, 2019

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE